Alan L. Edwards (6,086)
aedwards@kunzlerip.com
Alec J. McGinn (10,775)
alecmcginn@kunzlerip.com
KUNZLER NEEDHAM MASSEY & THORPE
8 East Broadway Ste 600
Salt Lake City, Utah 84111
Telephone: (801)994-4646
Facsimile:  (801)531-1929

*Attorneys for Defendants Dana Schlittler and eClaimVision, LLC*

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| QSG, Inc. a Utah corporation, | **ANSWER TO COMPLAINT** |
| Plaintiff, | |
| v. | Civil No.: 2:11-cv-00871-TC |
| DANA SCHLITTLER, an individual; ECLAIMVISION, LLC, a Minnesota limited liability company; MIKHAIL OPLETAYEV, an individual; VIKTOR POTERYAHKHIN, and individual; ST. CROIX REGIONAL MEDICAL CENTER, a Wisconsin corporation, JOHN TREMBLE, an individual | Judge Tena Campbell |
| Defendants. | |

The defendants Dana Schlittler and eClaimVision, LLC, jointly answer Plaintiff's complaint with the following responses to the Plaintiff's allegations.  To the extent any allegation herein is not specifically admitted, defendants deny the same.

### [PLAINTIFF'S] PRELIMINARY STATEMENT

1.       Mr. Schlittler and eClaimVision deny the allegations.

2.          Mr. Schlittler and eClaimVision admit that QSG has brought the suit in question, but deny that they are infringing QSG's intellectual property and/or trade secrets, or that they have breached any agreement with QSG.  Mr. Schlittler and eClaimVision further deny that they have caused any harm to QSG.

## PARTIES

3.          Mr. Schlittler and eClaimVision admit that QSG, Inc., is a Utah corporation with its principal place of business in Alpine, Utah.

4.          Mr. Schlittler and eClaimVision admit that Mr. Schlittler was the CEO of QSG, a member of the QSG board of directors, and an employee of QSG.  Mr. Schlittler denies that he was ever the President of QSG.  Mr. Schlittler and eClaimVision admit that Mr. Schlittler has an ownership interest in eClaimVision, LLC, and that he is a citizen and current resident of Minnesota, but deny that he has caused injury to QSG.

5.          Mr. Schlittler and eClaimVision admit that eClaimVision is a Minnesota limited liability company, but deny that it has caused injury to QSG.

6.          Mr. Schlittler and eClaimVision admit that Mikhail Opletayev is a former QSG Board member and a former employee of QSG, and are without knowledge as to his current citizenship and residency.  Mr. Schlittler and eClaimVision deny that Mr. Opletayev caused injury to QSG.

7.          Mr. Schlittler and eClaimVision deny that Viktor Poteryahkhin is a former employee of QSG, and are without knowledge as to his current citizenship and residency.  Mr. Schlittler and eClaimVision deny that Mr. Poteryahkhin caused any injury to QSG.

8.      Mr. Schlittler and eClaimVision are without knowledge as to whether St. Croix Regional Medical Center is a Wisconsin corporation, and deny that St. Croix has caused any injury to QSG.

9.      Mr. Schlittler and eClaimVision are without knowledge as to the current position of Mr. Tremble, and his citizenship and residency.  Mr. Schlittler and eClaimVision deny that Mr. Tremble has caused injury to QSG.


### JURISDICTION AND VENUE

10.      Mr. Schlittler and eClaimVision admit that this action alleges infringement of the Copyright Act and Utah law, but deny any violation thereof.

11.      Mr. Schlittler and eClaimVision admit this allegation.

12.      Mr. Schlittler and eClaimVision admit that venue in Utah is proper as to Mr. Schlittler.  Mr. Schlitter and eClaimVision deny that venue is proper as to eClaimVision, LLC, and reserve the right to contest venue.  Mr. Schlittler and eClaimVision are without knowledge as to the propriety of venue as to the remaining defendants.

13.      Mr. Schlittler and eClaimVision admit that this Court has personal jurisdiction over Mr. Schlittler.  Mr. Schlittler and eClaimVision deny that this Court has personal jurisdiction over eClaimVision, LLC and reserve the right to contest personal jurisdiction.  Mr. Schlittler and eClaimVision are without knowledge as to whether this Court has personal jurisdiction over the remaining defendants.

## GENERAL ALLEGATIONS

14.  Mr. Schlittler and eClaimVision admit the allegation.

15.  Mr. Schlittler and eClaimVision deny that the investments made by Quist and Garziano in QSG can be characterized as significant, and admit that other investors and QSG shareholders, including Mr. Schlittler, have made additional investments of time and money in QSG.

16.  Mr. Schlittler and eClaimVision deny that QSG is in the business of developing and vending software services to the healthcare industry – this statement of QSG's business is far broader than what QSG does.  QSG offers a single product – the computer program ExecQview, which was researched, designed, and developed by Mr. Schlittler.  Mr. Schlittler and eClaimVision further deny that ExecQview allows healthcare providers to manage and track the submission and payment of insurance claims; rather, ExecQview is a business intelligence program, targeted at the healthcare industry, which provides executives with an accessible view of business data.  Mr. Schlittler and eClaimVision admit that, as a whole, ExecQview is an original work entitled to protection under the Copyright Act. Mr. Schlittler and eClaimVision are without knowledge as to any other relevant laws which may protect the ExecQview software.

17.  Mr. Schlittler and eClaimVision admit that ExecQview became available in approximately early 2006.  Mr. Schlittler and eClaimVision admit that QSG made significant investments in the form of Mr. Schlittler's efforts as he researched, designed, and developed the ExecQview software.

18.      Mr. Schlittler and eClaimVision deny that QSG has sought to maintain secrecy as claimed.  Mr. Schlittler and eClaimVision admit that QSG has sought customers for the ExecQview software.

19.      Mr. Schlittler and eClaimVision admit that Mr. Schlittler began acting as CEO of QSG in approximately November 2006, but deny that he ever held the position of President.

20.      Mr. Schlittler and eClaimVision admit that Mr. Schlittler had authority to manage QSG's day-to-day operations and had access to QSG's customer information and certain assets, but deny that the authority is properly described as "substantial."  Mr. Schlittler and eClaimVision deny that Mr. Schlittler ever conspired to steal QSG technology, sabotage the company, or set himself up to compete with QSG as claimed.

21.      Mr. Schlittler and eClaimVision deny that Mr. Poteryahkhin was hired as a QSG employee.  Mr. Poteryahkhin was brought in as a contractor in January 2006 to aid in the development of the ExecQview software.  Mr. Schlittler and eClaimVision admit that Mr. Opletayev was hired as an employee.  Mr. Schlittler and eClaimVision admit that Mr. Opletayev served as a member of the Board from mid-2008 until at least August 2010.

22.      Mr. Schlittler and eClaimVision admit that Mr. Opletayev served for a time as the chief technology officer of QSG, and worked with Mr. Schlittler in developing ExecQview.  Mr. Schlittler and eClaimVision deny that Mr. Opletayev was fully compensated as an employee of QSG from 2005 through 2010.  Mr. Schlittler and eClaimVision deny that Mr. Schlittler and Mr. Opletayev conspired to terminate his employment.  Mr. Schlittler and eClaimVision deny

5

that Mr. Schlittler and Mr. Opletayev conspired to steal QSG technology, sabotage the company, and set themselves up with QSG resources to compete against QSG.

23.    Mr. Schlittler and eClaimVision deny that Mr. Poteryahkhin was a QSG employee. Mr. Schlittler and eClaimVision deny that Mr. Schlittler conspired to terminate Mr. Poteryahkhin. Mr. Schlittler and eClaimVision admit that Mr. Poteryahkhin worked with Mr. Opletayev and Mr. Schlittler in developing and programming ExecQview and developing the ExecQview database. Mr. Schlittler and eClaimVision deny that Mr. Poteryahkhin conspired with Mr. Schlittler to steal QSG technology, sabotage the company, and set themselves up with QSG resources to compete against QSG.

24.    Mr. Schlittler and eClaimVision admit that QSG appears to have filed a copyright registration for the ExecQview software on August 16, 2011, but are without sufficient knowledge as to whether the information contained therein was accurate or whether the registration is valid, and therefore deny the same.

25.    Mr. Schlittler and eClaimVision are without sufficient knowledge as to whether QSG is the sole owner of all right, title, and interest in the copyright for ExecQview, and therefore deny the same. Mr. Schlittler and eClaimVision are without knowledge as to whether QSG has, at all times, protected ExecQview for its own exclusive use and profit, and therefore deny the same.

26.    Mr. Schlittler and eClaimVision admit that they developed, with Mr. Opletayev and Mr. Poteryahkhin, a product called eClaimVision, but deny all other allegations.

27.     Mr. Schlittler and eClaimVision deny that eClaimVision is derived from and infringes on ExecQview.

28.     Mr. Schlittler and eClaimVision deny that Mr. Schlittler, Mr. Opletayev, and Mr. Poteryahkhin used technology and processes owned and developed by QSG, and which were instrumental in developing ExecQview, in developing eClaimVision.

29.     Mr. Schlittler and eClaimVision admit that Mr. Schlittler registered the domain name "837pi.com," but deny that he was entering into a venture to compete with QSG.  Mr. Schlittler and eClaimVision admit that the "837" in the domain name refers to the electronic 837 form file, which is an industry standard for seeking reimbursement payments from insurers.  Mr. Schlittler and eClaimVision deny that the well-known 837 form file, which was not developed by QSG, is the backbone of the QSG ExecQview software product, and further deny that the 837 form file is an industry standard for receiving reimbursement payments from insurers.

30.     Mr. Schlittler and eClaimVision admit that Mr. Schlittler registered the domain name "eClaimVision.com" on March 26, 2010, but deny that it was in furtherance of any conspiracy.

31.     Mr. Schlittler and eClaimVision admit that Mr. Schlittler registered the company eClaimVision, LLC with the Minnesota Corporation Commission on August 27, 2010, and did so without the knowledge or consent of QSG.  Mr. Schlittler and eClaimVision deny that eClaimVision is in the business of broadly providing software services to the healthcare industry – eClaimVision offers a single product that handles what is called "denial management" in the healthcare

industry. Mr. Schlittler and eClaimVision deny that the eClaimVision software

provides business intelligence or is otherwise in the same line of business as QSG.

32.     Mr. Schlittler and eClaimVision deny the allegations.

33.     Mr. Schlittler and eClaimVision admit that Mr. Schlittler was

compensated by QSG during the relevant period, but deny that Mr. Schlittler

received his full employment wages from QSG.

34.     Mr. Schlittler and eClaimVision deny that Mr. Schlittler terminated Mr.

Opletayev and Mr. Poteryahkhin. Mr. Schlittler and eClaimVision further deny

that they ever sabotaged QSG's relationship with its customers, or that

eClaimVision has ever competed with ExecQview. Mr. Schlittler and

eClaimVision further deny that they ever intended to destroy QSG or misuse QSG

intellectual property and trade secrets.

35.     Mr. Schlittler and eClaimVision deny that Mr. Opletayev and Mr.

Poteryahkhin were ever terminated by Mr. Schlittler, or that QSG was ever

exposed to potential liability due to actions by Mr. Schlittler.

36.     Mr. Schlittler and eClaimVision deny that Mr. Schlittler improperly forced

Quist and Garziano out of day-to-day management and off the Board. Mr. Quist

and Mr. Garziano were removed due to their failure to perform their

responsibilities. Mr. Garziano was the driving force to remove Mr. Quist from the

Board, and Walt Schwarz was the driving force to remove Mr. Garziano from the

Board. Mr. Schlittler and eClaimVision deny that Mr. Schlittler ever conspired

against the company. Mr. Schlittler and eClaimVision further deny that Mr.

Schlittler exposed QSG to potential liability by refusing to honor QSG

compensation agreements with Quist and Garziano.

37.     Mr. Schlittler and eClaimVision deny the allegations.

38.     Mr. Schlittler and eClaimVision admit that QSG sent a letter to Mr. Schlittler terminating his responsibilities at QSG and demanding the return of QSG assets, but deny the remaining allegations.

39.     Mr. Schlittler and eClaimVision are without knowledge as to this allegation, and therefore deny the same.

40.     Mr. Schlittler and eClaimVision deny the allegations.

41.     Mr. Schlittler and eClaimVision deny the allegations.

42.     Mr. Schlittler and eClaimVision admit the allegations.

43.     Mr. Schlittler and eClaimVision admit the allegations.

44.     Mr. Schlittler and eClaimVision admit the allegations.

45.     Mr. Schlittler and eClaimVision admit the allegations as true up to April 1, 2010.  However, Mr. Schlittler and eClaimVision are without knowledge sufficient to admit or deny this allegation after April 1, 2011, and therefore deny the same.

46.     Mr. Schlittler and eClaimVision are without knowledge sufficient to admit or deny this allegation, and therefore deny the same.

47.     Mr. Schlittler and eClaimVision are without knowledge sufficient to admit or deny this allegation, and therefore deny the same.

48.     Mr. Schlittler and eClaimVision are without knowledge sufficient to admit or deny this allegation, and therefore deny the same.

49.     Mr. Schlittler and eClaimVision are without knowledge sufficient to admit or deny this allegation, and therefore deny the same.

50.      Mr. Schlittler and eClaimVision deny that St. Croix sent any email to Mr. Schlittler that substantiates the claims asserted in the complaint.  Mr. Schlittler and eClaimVision admit that they had communicated with Mr. Tremble about the eClaimVision product, but deny that the eClaimVision product competes with ExecQview or uses stolen QSG technology.  Mr. Schlittler and eClaimVision deny the remaining allegations.

51.      Mr. Schlittler and eClaimVision are without knowledge as to the existence of any purported further communications showing any conspiracy, as alleged, and therefore deny their existence.  Mr. Schlittler and eClaimVision deny that Mr. Schlittler has conspired with St. Croix and Mr. Tremble to tamper with the ExecQview software.  Mr. Schlittler and eClaimVision admit that they entered into an agreement with St. Croix for use of the eClaimVision product, but deny that this violates any agreement with QSG, or that St. Croix ever induced Mr. Schlittler to breach his obligations to QSG.

52.      Mr. Schlittler and eClaimVision deny that the projected revenues and net profits were reasonable or anywhere near accurate.  Actual performance was far below the stated projections.  Mr. Schlittler and eClaimVision deny that QSG's failures were in any way attributable to Mr. Schlittler.


## FIRST CAUSE OF ACTION
### (Copyright Infringement Against Defendants Schlittler, Opletayev, And Poteryahkhin)

53.      Mr. Schlittler and eClaimVision incorporate by reference their responses in the preceding paragraphs.

54.     Mr. Schlittler and eClaimVision are without knowledge sufficient to admit or deny this allegation, and therefore deny the same.

55.     Mr. Schlittler and eClaimVision deny the allegations.

56.     Mr. Schlittler and eClaimVision deny the allegations.

57.     Mr. Schlittler and eClaimVision deny the allegations.

58.     Mr. Schlittler and eClaimVision deny the allegations.

59.     Mr. Schlittler and eClaimVision deny the allegations.

60.     Mr. Schlittler and eClaimVision deny the allegations.

61.     Mr. Schlittler and eClaimVision deny the allegations.

62.     Mr. Schlittler and eClaimVision deny the allegations.

63.     Mr. Schlittler and eClaimVision deny the allegations.

## SECOND CAUSE OF ACTION
**(Breach of Fiduciary Duty, Misappropriation of Business Opportunities, and Commission of Corporate Waste Against Defendants Schlittler and Opletayev)**

64.     Mr. Schlittler and eClaimVision incorporate by reference their responses in the preceding paragraphs.

65.     Mr. Schlittler and eClaimVision admit that Mr. Schlittler and Mr. Opletayev owed a fiduciary duty to QSG as directors and/or officers, but deny that this paragraph in the complaint is a complete summary of the appropriate legal standard.

66.     Mr. Schlittler and eClaimVision admit that Mr. Schlittler could not, for his own benefit, acquire an opportunity that is valuable and germane to the corporation's business, unless that opportunity was first offered to the corporation

and declined. Mr. Schlittler and eClaimVision deny that this paragraph in the
complaint is a complete summary of the appropriate legal standard.

67.         Mr. Schlittler and eClaimVision admit the allegation.

68.         Mr. Schlittler and eClaimVision deny that Mr. Schlittler and Mr.
Opletayev breached the fiduciary duties they owned to QSG by their conduct, and
deny the specific instances set forth.

69.         Mr. Schlittler and eClaimVision deny the allegation.

70.         Mr. Schlittler and eClaimVision deny the allegation.

71.         Mr. Schlittler and eClaimVision deny the allegation.

72.         Mr. Schlittler and eClaimVision deny the allegation.

73.         Mr. Schlittler and eClaimVision deny the allegation.

74.         Mr. Schlittler and eClaimVision deny the allegation.

75.         Mr. Schlittler and eClaimVision deny the allegations.


## THIRD CAUSE OF ACTION
### (Violation of Utah Uniform Trade Secrets Act against Defendants Schlittler, Opletayev, and Poteryahkhin)

76.         Mr. Schlittler and eClaimVision incorporate by reference their responses
in the preceding paragraphs.

77.         Mr. Schlittler and eClaimVision deny the allegations.

78.         Mr. Schlittler and eClaimVision deny the allegations.

79.         Mr. Schlittler and eClaimVision deny the allegations.

80.         Mr. Schlittler and eClaimVision deny the allegations.

81.         Mr. Schlittler and eClaimVision deny the allegations.

82.     Mr. Schlittler and eClaimVision deny the allegations.

83.     Mr. Schlittler and eClaimVision deny the allegations.

84.     Mr. Schlittler and eClaimVision deny the allegations.

85.     Mr. Schlittler and eClaimVision deny the allegations.

86.     Mr. Schlittler and eClaimVision deny the allegations.

87.     Mr. Schlittler and eClaimVision deny the allegations.

88.     Mr. Schlittler and eClaimVision deny the allegations.

**FOURTH CAUSE OF ACTION**
**(Aiding and Abetting Breach of Fiduciary Duty against St. Croix and Tremble)**

89.     Mr. Schlittler and eClaimVision incorporate by reference their responses in the preceding paragraphs.

90.     Mr. Schlittler and eClaimVision admit that Mr. Schlittler and Mr. Opletayev owed QSG a fiduciary duty, but deny that the remaining statements are a complete summary of the appropriate legal standard.

91.     Mr. Schlittler and eClaimVision admit that Mr. Schlittler and Mr. Opletayev could not, for their own benefit, acquire an opportunity that was valuable and germane to the corporation's business, unless that opportunity was first offered to the corporation and declined.  Mr. Schlittler and eClaimVision deny that this paragraph in the complaint is a complete summary of the appropriate legal standard.

92.     Mr. Schlittler and eClaimVision admit that Mr. Schlittler and Mr. Opletayev owed a duty to not waste corporate assets.

93.     Mr. Schlittler and eClaimVision deny the allegations.

94.     Mr. Schlittler and eClaimVision deny the allegations.

95.     Mr. Schlittler and eClaimVision deny the allegations.

96.     Mr. Schlittler and eClaimVision deny the allegations.


## FIFTH CAUSE OF ACTION
### (Civil Conspiracy and Tortious Interference With Contract against Defendants St. Croix, Tremble, Schlittler, Opletayev, and Poteryahkhin)

97.     Mr. Schlittler and eClaimVision incorporate by reference their responses

in the preceding paragraphs.

98.     Mr. Schlittler and eClaimVision deny the allegations.

99.     Mr. Schlittler and eClaimVision deny the allegations.

100.     Mr. Schlittler and eClaimVision deny the allegations.

101.     Mr. Schlittler and eClaimVision deny the allegations.

102.     Mr. Schlittler and eClaimVision deny the allegations.

**SIXTH CAUSE OF ACTION**
**(Breach of Contract against Defendant St. Croix)**

103.     Mr. Schlittler and eClaimVision incorporate by reference their responses in the preceding paragraphs.

104.     Mr. Schlittler and eClaimVision admit the allegation.

105.     Mr. Schlittler and eClaimVision deny the allegation.

106.     Mr. Schlittler and eClaimVision are without sufficient knowledge to admit or deny the allegations, and therefore deny the same.

107.     Mr. Schlittler and eClaimVision admit the allegation as true up to April of 2010.  Mr. Schlittler and eClaimVision are without sufficient knowledge to admit or deny the allegations after April 2010, and therefore deny the same.

108.     Mr. Schlittler and eClaimVision are without sufficient knowledge to admit or deny the allegations, and therefore deny the same.

109.     Mr. Schlittler and eClaimVision are without sufficient knowledge to admit or deny the allegations, and therefore deny the same.

110.     Mr. Schlittler and eClaimVision are without sufficient knowledge to admit or deny the allegations, and therefore deny the same.

111.     Mr. Schlittler and eClaimVision are without sufficient knowledge to admit or deny the allegations, and therefore deny the same.

**SEVENTH CAUSE OF ACTION**
**(Declaratory Judgment against Defendants Schlittler, Opletayev, and Poteryahkhin)**

112.     Mr. Schlittler and eClaimVision incorporate by reference their responses in the preceding paragraphs.

113.     Mr. Schlittler and eClaimVision admit the allegations.

114.     Mr. Schlittler and eClaimVision deny the allegations.

115.     Mr. Schlittler and eClaimVision deny the allegations.

116.     Mr. Schlittler and eClaimVision deny the allegations.

117.     Mr. Schlittler and eClaimVision deny the allegation.

118.     Mr. Schlittler and eClaimVision deny the allegations.

119.     Mr. Schlittler and eClaimVision admit the allegations.

120.     Mr. Schlittler and eClaimVision deny the allegations.

## COUNTERCLAIMS

Defendants Mr. Schlittler and eClaimVision complain and allege against QSG, Inc., on knowledge as to its own conduct and otherwise on information and belief as follows:

### The Parties

1. Mr. Dana Schlittler is an individual and a current resident of Minnesota.

2. eClaimVision, LLC is a Minnesota limited liability company with headquarters in Minnesota.

3. QSG, Inc. is a Utah corporation with its principal place of business in Alpine, Utah.

### Jurisdiction and Venue

4. This Court has diversity jurisdiction over these counterclaims under 15 U.S.C. §1332 as the parties are diverse, and the amount in controversy exceeds $75,000.00.  This Court also has supplemental jurisdiction over these related counterclaims under 28 U.S.C. §1367(a) as the counterclaims arise from a

common nucleus of operative facts.

5.   This Court has personal jurisdiction over QSG, Inc., as it is a Utah corporation with its principal place of business in Utah.

6.   Venue is proper under 28 U.S.C. §1391(a).

## GENERAL ALLEGATIONS

*Mr. Schlittler's Tenure at QSG, Inc.*

1.   Mr. Schlittler is one of the founders of QSG, Inc., and is a current shareholder. Mr. Schlittler holds approximately 20% of the shares in QSG.

2.   Mr. Schlittler is a software developer with experience developing software in multiple industries.  In 2004, Mr. Schlittler partnered with Mr. Quist and Mr. Garziano to develop the ExecQview software program.  Mr. Walt Schwarz became an early investor and shareholder in QSG.

3.   The ExecQview software provides healthcare executives with what is commonly referred to in the industry as "business intelligence."  Business intelligence generally refers to computer-based techniques for analyzing and presenting business data in an intuitive, easy to understand way.

4.   The ExecQview software was developed to provide executives with a tool to distill the vast amounts of digital data in a business into meaningful representations that would highlight trends and exceptions, and thus allow for better decision making.  The name "ExecQview" refers to this idea – that the software would provide healthcare "executives" with a "view" of their business data to help them make better business decisions.

5.   When QSG was formed, Mr. Schlittler took responsibility for developing the

17

ExecQview software.  Mr. Quist and Mr. Garziano did not have any technical experience or programming know-how.  Mr. Quist and Mr. Garziano represented to Mr. Schlittler that they had extensive contacts in the healthcare industry, and that they would be very successful in selling the ExecQview business intelligence program that he developed.

6. Mr. Schlittler immediately began work on developing the ExecQview software.  Mr. Schlittler brought Mr. Opletayev and Mr. Poteryahkin on as part of the development team to help code and implement the ExecQview software product.  The development team came up with a beta version of the product by April of 2006.

7. During this time, Mr. Schlittler agreed to deferred compensation from QSG for his extensive efforts in reliance upon Mr. Quist and Mr. Garziano's representations that they could successfully use their contacts to sell the ExecQview software.  Mr. Schlittler took out a home equity loan to support himself while he developed the ExecQview product.

8. In addition to developing the ExecQview product, Mr. Schlittler handled administrative tasks for QSG and client support for the ExecQview product. Mr. Schlittler also began to work on selling the ExecQview product.  Mr. Schlittler cold-called prospects and found and closed a number of major clients for QSG, including the defendant St. Croix.

9. In early 2007, Mr. Tremble at St. Croix asked Mr. Schlittler if QSG had considered using electronic 837 claim files and 835 remit files as a source of data for the business intelligence provided by the ExecQview software.  Since the 837/835 files were a national standard and widely used in the healthcare

18

industry, they would be an available, standard source of information that many clients would already have.  At the urging of Mr. Schlittler, QSG decided to use the 837/835 files, and Mr. Schlittler and the development team wrote a parser that would read the 837/835 files and load the information in them into a database.

10. While Mr. Schlittler was making these efforts for QSG, Mr. Quist and Mr. Garziano failed to make any significant contributions.  Mr. Garziano had another job that was occupying his time and which may have prevented him from fulfilling his responsibilities with QSG.  On information and belief, Mr. Quist had additional business ventures he was working with in addition to QSG.  While both men had represented that they could generate significant sales of the ExecQview software, neither were doing so.  Mr. Schlittler brought in the majority of clients that formed the revenue sources for QSG.

11. In February 2007, Mr. Garziano left his job and began working for QSG as the Vice-President of Sales and Marketing, and began collecting a full paycheck. Mr. Garziano, along with Mr. Schlittler, became increasingly frustrated with Mr. Quist's lack of efforts for QSG and lack of production.  Mr. Garziano sent Mr. Quist an email asking Mr. Quist to resign from the Board.

12. Under pressure, Mr. Quist voluntarily resigned from the Board in approximately July 2007.

13. Other difficulties on the Board existed.  In 2008, Board member Walt Schwarz became increasingly frustrated with Mr. Garziano's lack of performance in his VP role and wanted to terminate Mr. Garziano.  Walt Schwarz asked Mr. Schlittler to coordinate Mr. Garziano's termination, which

Mr. Schlittler did.  Walt and Garziano negotiated an arrangement where Garziano received a severance, and would get a commission for further sales, but would no longer be on salary.

14. In August 2008, Garziano resigned from the Board, and Mr. Opletayev came on the Board.

15. In October of 2008, Walt Schwarz called Mr. Schlittler and suggested that QSG use his brother, Dan Schwarz, to fill the role of VP of Sales and Marketing.  Based on Walt Schwarz's representations of his brother's experience in the healthcare industry, Dan Schwarz was brought into the VP role vacated by Mr. Garziano.  However, it quickly became evident that Mr. Dan Schwarz did not have the experience necessary to generate clients for QSG.

16. In May 2010, Mr. Schlittler informed Mr. Walt Schwarz of his brother's failure to perform.  Mr. Walt Schwarz became agitated and blamed Mr. Schlittler for his brother's failures.  Mr. Walt Schwarz also informed Mr. Schlittler that he had been asking Dan to perform tasks for another company that Walt had invested in, which was unrelated to QSG.

17. In June 2010, despite Mr. Schlittler's efforts in developing, marketing, supporting, and selling the ExecQview product, Mr. Walt Schwarz informed Mr. Schlittler that the Board was dissatisfied with his performance.  However, Walt was the only Board member dissatisfied with Mr. Schlittler's performance.

18. In July 2010, Mr. Schlittler was no longer being paid by QSG, and QSG was out of money.

19. In August 2010, the shareholders of QSG met and removed Mr. Schlittler and Mr. Opletayev from the Board, and terminated Mr. Schlittler. QSG demanded that Mr. Schlittler immediately deliver the software; however, such "immediate delivery" was not logistically feasible, and an attempt to do so would have caused damage to QSG clients. Mr. Schlittler coordinated the transfer of rights to the hosting facility for the ExecQview software in September of 2010.

20. Mr. Schlittler, while working for QSG, agreed to defer a large portion of his salary in order to ease the financial strain on QSG as it got up and running. At the time of his termination, QSG owed Mr. Schlittler approximately $445,000 in deferred salary. QSG has never paid Mr. Schlittler the deferred salary owed to him, or any interest thereon.

*The eClaimVision Product*

21. In early 2010, Mr. Schlittler began work on a separate project with Mr. Opletayev. The product was a denial management software package. The denial management software package would coordinate the payment of an insurance claim by the insurer and by the insured. This denial management software package would be called eClaimVision.

22. eClaimVision and ExecQview are not competing products. ExecQview cannot be used to perform denial management. The eClaimVision software cannot be used to perform business intelligence functions. The two software products provide different services to different players in the healthcare industry.

23. To date, no user of ExecQview has ever abandoned use of ExecQview for the eClaimVision software, and neither Mr. Schlittler nor eClaimVision have ever urged any individual or company to switch from ExecQview to the eClaimVision software.  Indeed, such action would not make sense since the eClaimVision software cannot provide the ExecQview functionality.

24. Mr. Schlitter, Mr. Opletayev and Mr. Poteryahkhin did not infringe any copyright in the ExecQview software in developing eClaimVision.  As explained above, the software products are so different that the ExecQview code would provide little support for the eClaimVision code.

25. The only portions common to the ExecQview software and the eClaimVision software were portions written by Mr. Poteryahkhin **prior** to coming to QSG, and a parser written by Mr. Opletayev which reads the standard 837/835 files.

*QSG After Mr. Schlittler's Departure*

26. QSG has failed to properly maintain the ExecQview software since Mr. Schlittler's departure.  None of the existing Board members and officers has a sufficient technological background to understand and maintain the ExecQview software.

27. QSG convinced Mr. Opletayev and Mr. Poteryahkhin to continue to support the ExecQview software through February 2011. In February 2011, Mr. Opletayev and Mr. Poteryahkhin informed QSG that they were no longer willing to support the ExecQview product under the terms QSG had offered.

28. Upon information and belief, QSG has not brought in anyone to maintain the ExecQview software, or to provide technical support to ExecQview clients.

22

As a result, the ExecQview software has stopped working for some QSG clients, including St. Croix.

29. Upon information and belief, other QSG clients are choosing not to renew their contracts with QSG due to the poor support being offered.

30. Significant changes affecting the 837/835 file formats are coming at the beginning of 2012 as part of the 5010 update for the 837/385 standard ANSI format.  Upon information and belief, the current management of QSG is currently unaware of these changes and is not taking action to prepare for the changes.  The Board's failure to anticipate and implement necessary changes to the ExecQview software accounting for these changes is likely to cause widespread problems among existing QSG customers in 2012.

## FIRST COUNTERCLAIM
*Declaratory Judgment of Non-Infringement of Copyright*

31. Mr. Schlittler and eClaimVision, LLC incorporate the above paragraphs as if set forth herein.

32. A justiciable controversy has arisen between Mr. Schlittler and eClaimVision, LLC, and QSG concerning whether the eClaimVision software infringes any valid copyright interest held by QSG in the ExecQview software.

33. Mr. Schlittler and eClaimVision, LLC request that this Court enter an order specifying that neither Mr. Schlittler nor eClaimVision, LLC have infringed any valid copyright interest held by QSG in the ExecQview software.

SECOND COUNTERCLAIM
*Declaratory Judgment Specifying No Violation of the Utah Uniform Trade Secrets Act*

34. Mr. Schlittler and eClaimVision, LLC incorporate the above paragraphs as if

set forth herein.

35. A justiciable controversy has arisen between Mr. Schlittler and eClaimVision,

LLC, and QSG concerning whether Mr. Schlittler and/or eClaimVision, LLC

have misappropriated any trade secrets of QSG.

36. Mr. Schlittler and eClaimVision, LLC request that this Court enter an order

specifying that neither Mr. Schlittler nor eClaimVision, LLC have

misappropriated any trade secrets of QSG.

THIRD COUNTERCLAIM
*Breach of Contract*

37. Mr. Schlittler incorporates the above paragraphs as if set forth herein.

38. QSG, Inc. agreed to provide Mr. Schlittler with deferred compensation for his

work in connection with the ExecQview program.

39. Upon information and belief, the deferred compensation owed to Mr.

Schlittler amounts to approximately $445,000 dollars, plus interest.

40. QSG, Inc. has not paid Mr. Schlittler the compensation it agreed to pay him.

41. Mr. Schlittler therefore requests that this Court order QSG, Inc. to pay the

deferred compensation which it owes to Mr. Schlittler.

PRAYER FOR RELIEF

WHEREFORE, Dana Schlittler and eClaimVision, LLC, pray for a judgment that:

A.       Dismisses the actions against them, and that the plaintiff take nothing;

B.      Awards Mr. Schlittler his deferred compensation, and interest;

C.      Awards Mr. Schlittler his reasonable attorneys fees and costs;

D.      Declares that neither Mr. Schlittler nor eClaimVision, LLC are infringing

any copyright owned by QSG or misusing any trade secret owned by

QSG;

E.      Awards Mr. Schlittler and eClaimVision any other relief that this Court

deems appropriate.


DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, demands a trial by

jury of this action, including the Counterclaims.


DATED: November 7, 2011


By: /s/ Alan L. Edwards
Alan L. Edwards
KUNZLER NEEDHAM MASSEY &
THORPE
8 East Broadway Ste 600
Salt Lake City, Utah 84111


Attorneys for Defendants

CERTIFICATE OF SERVICE

I hereby certify that on November 7 2011, I electronically submitted the foregoing
ANSWER TO COMPLAINT to the Clerk of the Court using the EC/ECF system, which
sent notification of such filing to the following:

Marcus R. Mumford
Mumford West & Snow, LLC
15 West South Temple, Suite 1000
Salt Lake City, Utah 84101
mrm@mumfordwest.com


/s/ Alec J. McGinn