IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| QSG, INC.,<br><br>      Plaintiff,<br><br>vs.<br><br>DANA SCHLITTLER,<br><br>      Defendant. | ORDER AND MEMORANDUM DECISION<br><br><br><br><br><br>Case No. 2:11-CV-871-TC |

On October 31, 2014, the court held a hearing on two motions: (1) Plaintiff QSG, Inc.'s Motion for Rule 37 Sanctions Against Defendant; and (2) *pro se* Defendant Dana Schlittler's Motion to Compel. At the hearing, QSG was represented by counsel, but Mr. Schlittler did not appear. He contends that he did not receive notice, but according to the notice of hearing on the court's docket, notice was sent to Mr. Schlittler at the Minnesota address on record. The court proceeded and ruled from the bench, granting the motion for sanctions and denying the motion to compel. This written order memorializes the court's decision.

## I. BACKGROUND

In September 2011, Plaintiff QSG, Inc. filed a complaint alleging software copyright infringement, misappropriation of a trade secret, breach of fiduciary duty, misappropriation of business opportunities, commission of corporate waste, and tortious interference with contract. *Pro se* Defendant Dana Schlittler (the only remaining Defendant) filed a counterclaim for breach of contract.

QSG filed its complaint in September 2011. Numerous parties have been dismissed since then. Only Mr. Schlittler remains. This three-year-old case has not progressed beyond the discovery stage, and that, according to QSG, is due to Mr. Schlittler's intentional evasion of his discovery obligations.

### A.  Nature of the Claims Filed by QSG and Mr. Schlittler[1]

Mr. Schlittler, with two other individuals, founded QSG in 2004. In November 2006, he became President and CEO of QSG. He was also a member of the QSG Board of Directors. Currently he works for eClaimVision, LLC,[2] which he founded in 2010.

QSG developed and sells software services to the health care industry to track insurance claims. Its computer software product is called ExecQview.

According to QSG, Mr. Schlittler, as President and CEO, was given substantial authority to manage QSG's day-to-day operations and had access to all of QSG's customer databases as well as computers, electronic storage devices, and other QSG assets. QSG alleges that while he was President and CEO, Mr. Schlittler, with Mikhail Opletayev and Viktor Poteryahkhin (former QSG employees), stole QSG technology (the ExecQview software) and sabotaged the company by, for example, deliberately inserting programming malfunctions in ExecQview. Mr. Opletayev was QSG's Chief Technology Officer, and Mr. Poteryahkhin was a software programmer at QSG (collectively referred to as "Co-Defendants"). During this time, Mr. Schlittler allegedly used

---

[1]The information listed in this section is drawn from QSG's Complaint and Mr. Schlittler's Counterclaim. The information presented is based on allegations only, and the court's recitation here does not constitute findings of fact.

[2]Mr. Schlitter's former co-defendant eClaimVision was dismissed based on lack of personal jurisdiction.

QSG resources to establish eClaimVision and compete against QSG (eClaimVision provides software services to the healthcare industry).

While at QSG, Mr. Schlittler forced the two co-founders out of day-to-day management and off the Board of Directors.  Then, without the knowledge or consent of the Board, he terminated the employment of Mr. Opletayev and Mr. Poteryahkhin so the two Co-Defendants could work for eClaimVision.  In August 2010, QSG sent a letter to Mr. Schlittler terminating his employment and demanding return of all QSG assets (apparently, as the day-to-day manager, Mr. Schlittler had control over the assets).  Those assets included computers and electronic storage devices containing valuable customer information.  Mr. Schlittler refused to return the assets, so QSG filed the suit here.

Mr. Schlittler filed a counterclaim, alleging that he partnered with Mr. Quist and Mr. Garziano to develop the ExecQview software and that he did the bulk of the work because neither Mr. Quist nor Mr. Garziano had any technical experience or programming know-how. During the time Mr. Schlittler developed ExecQview, he agreed to deferred compensation from QSG for his efforts, relying on Mr. Quist's and Mr. Garziano's reassurance that they would use their contacts to sell ExecQview.  He handled administrative tasks and client support.  According to Mr. Schlittler, Mr. Quist and Mr. Garziano failed to make any significant contributions to QSG and Mr. Schlittler brought in the majority of clients (and revenue) for QSG.

In 2010, Mr. Schlittler was not being paid by QSG, and QSG was out of money.  The Board of Directors removed Mr. Schlittler from the Board and terminated his employment.  At the time of his termination, QSG allegedly owed him approximately $445,000 in deferred salary. QSG takes the position that Mr. Schlittler took significant assets from QSG and was working not

for QSG's benefit but for his own (and eClaimvision's) benefit. The parties' claims are interrelated and so evidence to support the Plaintiff's claims and Mr. Schlittler's counterclaim overlaps to some extent.

**B.     Mr. Schlittler's Response to QSG's Discovery Request and the Court's Order Granting QSG's Motion to Compel**

The discovery request that generated this dispute was filed by QSG on January 16, 2013. When QSG received no response from Mr. Schlittler to its January 2013 request for production, it filed a motion to compel (Doc. No. 90) in May 2013. Mr. Schlittler did not respond to the motion. Magistrate Judge Evelyn Furse issued an order to compel (Doc. No. 79) in October 2013, and included in that order a general award of attorneys' fees (see Mar. 11, 2014 Order (Doc. No. 87)). When Mr. Schlittler did not produce the information he was ordered to produce, the magistrate judge clarified the order to compel in March 2014, specifically ordering Mr. Schlittler to respond to QSG's Request for Production of Documents within 30 days of the date of the order and pay $975.00 in attorneys' fees to QSG. (See Doc. No. 87.)

Mr. Schlittler only partially responded to the March 2014 Order to Compel. By April 15, 2014, he paid $125.00 to QSG, produced a single document, and objected to the original January 2013 discovery request (although the deadline for filing objections had long since passed). Based on Mr. Schlittler's lackluster response, QSG filed a Motion for Sanctions and/or Default Judgment Against Defendant (Doc. No. 90) on April 24, 2014.

After a June 25, 2014 hearing (at which Mr. Schlittler did appear[3]), the court denied

---

[3]The court was also hearing Mr. Schlittler's motion for summary judgment, which the court denied at the end of the hearing.

QSG's request for default judgment against Mr. Schlittler, but did so without prejudice. (See June 25, 2014 Order (Doc. No. 100).) The court then referred the matter for a settlement conference, which proved to be unsuccessful.

Since then, Mr. Schlittler has paid another portion of the remaining attorney fee sanction and produced (in September 2014) approximately 200 pages of email correspondence. But his response still did not fully comply with the Order To Compel. So on September 22, 2014, QSG renewed its motion for sanctions, in which it requested that the court strike Mr. Schlittler's counterclaim for breach of contract, or at least prohibit Mr. Schlittler from introducing his breach of contract claim into evidence. (See Doc. No. 115.)

Mr. Schlittler filed an unresponsive opposition to the renewed motion for sanctions. He did not address the discovery issues raised by QSG. Instead, he pleaded his breach of contract case, requested discovery from QSG, and requested an *in camera* review by the court of certain documents.

Mr. Schlittler also filed a motion to compel QSG to produce certain documents. He contends that QSG was not completely responsive to his January 30, 2013 discovery request.

## II. ANALYSIS

**A.  Motion to Compel**

For the reasons set forth in the Plaintiff's Opposition to Defendant's Motion to Compel Discovery (Doc. No. 113), Mr. Schlittler's Motion to Compel (Doc. No. 111) is DENIED.

B.   **Motion for Sanctions**

Federal Rule of Civil Procedure 37 gives the court discretionary authority to sanction a party for not obeying a discovery order. For example, a court may designate facts as true, prohibit the party from supporting or opposing claims or defense and introducing matters into evidence, strike pleadings in whole or in part, stay proceedings until order is obeyed, dismiss the action in whole or in part, issue default judgment, or find contempt of court. Fed. R. Civ. P. 37(b)(2)(A). The rule also allows the court to order the disobedient party to pay attorneys' fees:

> Instead of or in addition to the [approved sanctions], the court must order the disobedient party, the attorney advising that attorney, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2)(C).

A court has the authority to dismiss claims as a sanction for failure to comply with a discovery order. But in Ehrenhaus v. Reynolds, the Tenth Circuit unequivocally stated that "dismissal represents an extreme sanction appropriate only in cases of willful misconduct." 965 F.2d 916, 920 (10th Cir. 1992). "Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is dismissal an appropriate sanction." Id. at 921. A sanction should be "just" and "related to the particular claim at issue in the order to provide discovery." Id. at 920.

The Ehrenhaus court articulated five factors the court must consider when faced with a request to sanction a party by dismissing a claim.

> Before choosing dismissal as a just sanction, a court should ordinarily consider a number of factors, including: (1) the degree of actual prejudice to the [party seeking the sanction]; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in

>advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.

Id. (internal citations and quotation marks omitted). The court need not necessarily give the five factors the same weight. Id. at 922.

    1.    <u>Degree of Actual Prejudice to QSG, Inc.</u>

The court concludes that QSG has been significantly prejudiced by Mr. Schlittler's failure to comply with discovery requests. This case is more than three years old, yet it has not progressed beyond the discovery stage.

During the hearing, counsel for QSG stated that Mr. Schlittler, as the hands-on person during the alleged scheme and as the creator of eClaimvision, has control over a host of information QSG that needs in order to prepare for and take depositions, to present its case to a jury, and to defend against the breach of contract claim. QSG points out that at one time Mr. Schlittler represented to QSG that he had responsive documents and was in the process of gathering them. (See Affidavit of Ronald Madson (Doc. No. 90-2) ¶ 5.) According to Mr. Madson, Mr. Schlittler had said the information was voluminous and he needed more time to respond. (See id.) Yet his only production, months later, consisted of approximately 200 pages of email communications. The small amount of information provided, especially in light of his previous representations, suggests that he has more information but is wilfully holding on to it to delay the proceedings. Another interpretation is that he never had the information but told QSG that he did in order to delay and impede the discovery process. Either way, his response is demonstrates a lack of good faith.

Mr. Schlittler's failure to produce deprives QSG of the right to effectively prosecute the

case. Much of the information is in Mr. Schlittler's possession and was not produced, so the amount of evidence available is much smaller. Although the case will move forward with a truncated trial, QSG represented to the court that its ability to prove its case will be significantly hampered. For instance, QSG's counsel represented at the hearing that although QSG will be able to offer some witness testimony, it will not be able to know, much less prove, the extent of its damages if liability is established.

Finally, the court notes that QSG has incurred otherwise unnecessary attorneys fees in its attempt to move the case forward, as is demonstrated by its motion to compel and its two motions for Rule 37 sanctions.

For all of the reasons stated above, this factor weighs heavily in favor of QSG.

    2.    <u>Amount of Interference With the Judicial Process</u>

This case remains at the discovery stage three years after it was filed. This court has issued two orders to compel and has considered two motions for sanctions. Mr. Schlittler has not given any valid reason for his failure to respond and obey the court's orders. Mr. Schlittler's recalcitrant behavior continues to waste judicial resources, delay resolution of this case, and flout the court's authority. This factor weighs heavily in favor of granting the requested sanction.

    3.    <u>The Culpability of Mr. Schlittler</u>

Mr. Schlittler's behavior cannot be justified under the circumstances. He provides no valid reason (or any reason) for his failure to respond to reasonable discovery requests, failure to respond to motions (literally or by evading the issues in his responses), and failure to obey court orders.

4.  Warning In Advance

Mr. Schlittler had advance warning of the court's action.

After QSG filed its motion to compel in May 2013, the court, in October 2013, ordered Mr. Schlittler to respond to QSG's discovery requests and pay QSG's attorneys' fees. (See Doc. Nos. 79, 87.) In March 2014, the court issued a second, amended order that gave a specific deadline and ordered the specific sanction of $975 in attorneys' fees. (See Doc. No. 87.) Mr. Schlittler was aware of the order, which is demonstrated by his partial payment of attorneys' fees.

In April 2014, QSG filed a motion for Rule 37 sanctions requesting that the court strike Mr. Schlittler's counterclaim and grant default judgment to QSG. Mr. Schlittler responded and attended the hearing on that motion. Although the court denied the motion, the court noted that QSG was free to re-file the motion if Mr. Schlittler's recalcitrance persisted.

On October 14, 2014, QSG renewed its motion for sanctions, in which QSG asked the court to strike Mr. Schlittler's counterclaim. Mr. Schlittler responded to the motion for sanctions and filed a motion to compel. The court then scheduled a hearing on the motions. Mr. Schlittler failed to appear.

He cannot reasonably argue that he received no warning that his counterclaim was in jeopardy. Moreover, he wasted multiple opportunities to avoid the consequences.

5.  Efficacy of Less Sanctions

Mr. Schlittler has already been ordered multiple times to respond or face the possibility of a default judgment against him. He has been ordered to pay attorneys' fees. He continues to resist his discovery obligations even though he has been given ample time to correct the problem. Because his noncompliance has hampered QSG's ability to defend against his breach of contract

claim, the court finds that striking his counterclaim (without granting default judgment), is an appropriate sanction.  A lesser sanction would only cause more delay and would not reflect the seriousness of Mr. Schlittler's stalling tactics.  The court will set a trial date and allow QSG to move forward and resolve the case.

      6.    Conclusion

Despite multiple warnings and orders, Mr. Schlittler intentionally failed to comply.  The circumstances, analyzed under each of the five Ehrenhaus factors, weigh in favor of granting the requested sanction.  Accordingly, the court hereby GRANTS the motion for sanctions and STRIKES Mr. Schlittler's breach of contract counterclaim.

**Jury vs. Bench Trial**

As discussed at the hearing, the court has scheduled a two-day jury trial to begin January 26, 2014.  Although QSG requested a jury trial in its complaint, counsel for QSG suggested at the hearing that a bench trial may be more appropriate (and a more efficient use of judicial resources) given the abbreviated state of the evidence.  For now, the court will schedule the trial to be heard by a jury.  The court, however, orders each party to inform the court, in writing, whether that party still wishes to proceed with a jury or whether the party will waive a jury trial and allow the case to proceed with a bench trial.  The parties must inform the court of their decisions no later than December 1, 2014.

\* \* \* \* \*

**ORDER**

For the reasons set forth above, Defendant Dana Schlittler's Motion to Compel Discovery (Doc. No. 111) is DENIED, Plaintiff QSG, Inc.'s Motion for Rule 37 Sanctions Against

Defendant (Doc. No. 115) is GRANTED, and Mr. Schlittler's breach of contract counterclaim is STRICKEN.

SO ORDERED this 5th day of November, 2014.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge